UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
===============================================X
JOSEPH TORRE and BARBARA TORRE,

                              Plaintiffs,              **COMPLAINT**

    -against-                                   Civil Docket No.:

ASSOCIATED UNIVERSITIES, INC.

                              Defendant.
===============================================X


       Plaintiffs JOSEPH TORRE and BARBARA TORRE, by their attorneys JOSEPH LANNI

and THE JACOB D. FUCHSBERG LAW FIRM, L.L.P., as and for their Verified Complaint,

upon information and belief, allege the following:


<u>**PARTIES**</u>

1.  At all times subsequently referenced, plaintiff JOSEPH TORRE was and is a resident,
domicile and citizen of the State of New York.


2.  At all times subsequently referenced, plaintiff BARBARA TORRE was and is a resident,
domicile and citizen of the State of New York.


3.  At all times subsequently referenced, plaintiff JOSEPH TORRE[1] resides at 1085 Oakneck
Road, West Bayshore, NY  11706.

---

[1] JOSEPH TORRE is variously referred to as Mr. TORRE and TORRE throughout this Complaint.

4.  At all times subsequently referenced, plaintiff BARBARA TORRE resides at 1085 Oakneck Road, West Bayshore, NY  11706.

5.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and still is a purported domestic corporation organized and existing under the laws of the State of New York.

6.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and still is a domestic corporation with its principal place of business located at 1400 16th Street NW, Washington, DC  20036-2252.

7.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that conducted business operations in the State of New York.

8.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that transacted business within the State of New York.

9.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

10. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

11. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

12. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

13. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that is a research management company that operates, manages, directs, controls and supervises facilities, including research laboratories, for the U.S. government.

14. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that is a research management company that operates, manages, directs, controls and supervises facilities, including research laboratories, for the U.S. Department of Energy (USDOE).

15. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was the operating contractor that operated, managed, directed, controlled and supervised a facility, including a research laboratory, for the U.S. Department of Energy known as

Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

16. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., occupied, operated, managed, directed, controlled, and supervised the land, property, buildings, structures and appurtenances known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

17. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was in possession of the land, property, buildings, structures and appurtenances known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

18. At all times subsequently referenced, the U.S. Department of Energy (USDOE) owned Brookhaven National Laboratory.

## JURISDICTION

19. The subject matter jurisdiction of this Court is invoked since the defendant's transactions, acts, omissions, and conduct that form, in pertinent part, the factual basis of the causes of action in plaintiffs' Complaint occurred at Brookhaven National Laboratory on a federal enclave, i.e., on land owned by and under the jurisdiction of the U.S. Department of Energy, that is located within the Town of Upton, County of Suffolk, and State of New York. See, Schiappa v. Brookhaven Science Associates, LLC, 403 F. Supp. 2d 230 (E.D.N.Y. 2005).

## VENUE

20. The venue of this action is premised upon the defendants' transactions, acts, omissions, and conduct form, in pertinent part, the factual basis of the causes of action in plaintiff's Complaint having occurred on the grounds of a U.S. Department of Energy (USDOE) owned laboratory and research facility, i.e., Brookhaven National Laboratory, that is a federal enclave located in the Eastern District of New York. See, 28 U.S.C. §1391(b)(2).

## JURY DEMAND

**21.** Plaintiffs demand trial by jury of all issues presented in this action that are triable by a jury as of right pursuant to the applicable statutes and court rules.

## INTRODUCTION

22. This action is for injuries sustained by plaintiff JOSEPH TORRE due to defendant AUI's legacy contamination[2] of Brookhaven National Laboratory (BNL) through environmental pollution with dangerous levels of trichloroethylene (TCE). Defendant AUI was the BNL operating contractor during the years 1947 – 1998. AUI was terminated as the operating contractor by USDOE in 1998 and replaced by Brookhaven Science Associates (BSA) at that time. AUI caused extensive TCE environmental pollution at BNL due to its careless discharge, release and disposal of this toxic chemical on the premises while it was the operating contractor in possession and control of the site. It is claimed that JOSEPH TORRE's exposure to dangerous levels of TCE environmental pollution while working at

---

[2] "Legacy contamination" is the environmental pollution that remains on, within and in the vicinity of the land, buildings and structures in a location after the polluter has ceased ownership, operation, possession, control or management of the site or premises or has ceased activities at a site.

BNL during the period 1998 – 2017[3] was a substantial factor resulting in his development of liver cancer. Mr. TORRE was diagnosed with liver cancer on or about January 4, 2019.

## FACTS COMMON TO ALL CAUSES OF ACTION

### AUI Caused Trichloroethylene (TCE) Pollution, Contamination & Exposures at Brookhaven National Laboratory Resulting in Hazards, Dangers & Risks to Human Health, Safety & Welfare

23. The events, actions, conduct, activities, omissions, transactions, occurrences, incidents and circumstances at issue in this matter include, but are not limited to, the following facts:

24. Brookhaven National Laboratory (BNL) occupies an approximately 5,300-acre site in Upton, NY, in Suffolk County on Long Island.

25. BNL is a research laboratory and facility with numerous buildings, structures and scientific facilities.

26. BNL has existed since 1947.

27. USDOE has provided for the operation of BNL by annual "operating contract" with a private "operating contractor" since 1947.

28. The annual "operating contract" was lucrative to whoever was the "operating contractor".

---

[3] JOSEPH TORRE worked at BNL during the years 1992 – 2017. Mr. TORRE was exposed to TCE environmental pollution at BNL as a result of AUI's legacy contamination during the approximate years 1998 – 2017. TORRE's exposure to AUI's legacy contamination encompassed approximately 19 out of the 25 years that he worked at BNL. This 19 year period encompasses the time that BSA was BNL's operating contractor during TORRE's work at the site.

29. The "operating contractor" for BNL during the period 1947 – 1998 was defendant ASSOCIATED UNIVERSITIES, INC. (AUI).

30. AUI collected billions of taxpayer dollars in revenue as the "operating contractor" for BNL.

31. USDOE terminated the "operating contract" with AUI in 1998 for the latter's breach and gross neglect of its contractual duties and responsibilities to safely and properly operate BNL.

32. Pursuant to the "operating contract", the "operating contractor" for BNL was responsible to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

33. The responsibilities of the BNL "operating contractor" included, but were not limited to, the following: (1) protection and conservation of the surrounding environment and environmental resources at the laboratory and on the site; (2) formulation, development, promulgation, and implementation of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protection of the health, safety and welfare of employees, contractors, visitors and the general public

against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

34. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

35. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

36. AUI extensively used Trichloroethylene (TCE) at BNL in pertinent part, as a solvent, degreaser, cleaning solution and disinfecting agent despite its known toxicity to humans.

37. AUI extensively used TCE at BNL in many different activities including, but not limited to, the following: machining; metalworking; metal fabricating; milling; supercomputer operations; computer network maintenance, repair and reconfiguration; electrical equipment maintenance and repair; telephone and telecommunications maintenance and repair; information technology equipment maintenance and repair; construction; electrical contracting; scientific facility construction; scientific facility maintenance and repair; laboratory maintenance; laboratory experiments; custodial services; and housekeeping services.

38. AUI extensively used TCE at BNL in the course of work, operations, maintenance, services, research and many other activities in many buildings, structures, facilities, and locations.

39. AUI extensively used TCE at BNL as work supplies and materials given to computer operators, computer network technicians, information technology technicians, electronic technicians, telephone technicians, telecommunications technicians, machinists, metalworkers, scientific facility technicians, electricians, construction laborers, riggers, custodians and housekeepers for use in their customary, habitual and routine work activities, responsibilities and duties.

40. AUI extensively used TCE at BNL as work supplies and materials dispensed to workers who were employees, contractors and/or subcontractors.

41. AUI extensively purchased, ordered, delivered, stored, dispensed and used TCE at BNL in aerosol, spray, liquid and bulk form.

42. AUI extensively purchased, ordered, stored, dispensed and used TCE at BNL in the form of aerosol cans/bottles, spray cans/bottles, bottled liquids, 55 gallon drums/barrels and liquid bulk deliveries for tank storage.

43. Among AUI's uses of TCE at BNL were the following:

44. Computer operators and technicians at BNL were supplied TCE to use in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to remove dust, micro-debris and particles off the head drives, tape drives and other components of supercomputers between computer tape spool changes.

45. Computer network technicians, information technology technicians, electronic technicians, telephone technicians, and telecommunications technicians at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to remove dust, dirt and particles from circuit boards, transistors, silicon chips, wiring, wire connections, electrical and mechanical components, supercomputers, computers, and electrical, telephone, and telecommunications equipment.

46. Electricians, construction laborers and other tradesmen at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning

solutions to remove grease, dirt, grime and particles from electrical switchbox components, gear box components, piping, conduit, connections, solid state circuits, circuit boards, wiring, and adapters during construction work and activities.

47. Machinists, metalworkers, millers, fabricators and machine shop workers at BNL were supplied TCE in liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to remove grease, dirt, grime and particles from metal parts, components, apparatus, equipment, appliances, articles and objects before installation and operations.

48. Scientists and scientific facility technicians at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, bottled liquid, liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to remove grease, dirt, grime and particles from the scientific facilities, equipment and instruments in between experiments.

49. Riggers, custodians and housekeepers were supplied TCE in aerosol can/bottle, spray can/bottle, bottled liquid, liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to remove dirt, dust, particles and microorganisms from numerous BNL buildings, structures, facilities, equipment, instruments, objects and locations throughout the site.

50. AUI advised, instructed, directed and/or ordered BNL workers to discharge, release, discard and dispose of TCE after use in sink, basin and floor drains, sewers, septic sewer system,

sewer pipes, cesspools, septic tanks, soils, trenches, shafts, holes, discharge basins and landfills.

51. TCE was known to be toxic to humans in the 1950's.

52. TCE was banned from use in food and pharmaceutical production by most developed nations in the world by the 1970's due to its toxicity.

53. TCE was considered a probable and/or suspected human carcinogen by the 1970's.

54. In 1978, toxicology researchers at BNL published an article in a peer reviewed toxicology and pharmacology scientific journal that described experiments designed to measure the toxicity of TCE. The article described experiments that showed TCE to be toxic whether the exposure was exclusive or in combination with other chemicals.

55. The U.S. Environmental Protection Agency (USEPA) declared BNL a Superfund Site in 1989, in pertinent part, due to AUI's severe and pervasive TCE environmental pollution and toxic contamination in the buildings, structures, facilities, groundwater, soils, waste disposal system, sewer system, cesspools, surface waters and ambient air throughout the site.

56. AUI did not safely use TCE at BNL.

57. AUI did not safely discharge, release, discard and dispose of TCE at BNL.

12

58. AUI's protracted and continuous failures to safely use, discharge, release, discard and dispose of TCE at BNL directly caused severe and extensive TCE environmental pollution and toxic contamination of BNL's soils, groundwater, surface water, ambient air, buildings, facilities, structures and land.

59. AUI's extensive TCE environmental pollution and toxic contamination of BNL subjected workers at the site, including JOSEPH TORRE, to TCE exposure that caused extreme hazards, dangers, and risks to human health, safety and welfare.

60. AUI violated the terms of the "operating contract" by failing to meet its responsibilities, duties and obligations as the BNL "operating contractor" to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site due to its extensive TCE environmental pollution and toxic contamination of BNL.

61. AUI violated the terms of the "operating contract" by failing to meet its responsibilities, duties and obligations as the BNL "operating contractor" to ensure the following properly occurred: (1) protection and conservation of the surrounding environment and environmental resources at the laboratory and on the site; (2) formulation, development, promulgation, and implementation of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health,

13

safety and welfare hazards; and (4) protection of the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

62. AUI violated its duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site due to its extensive TCE environmental pollution and toxic contamination of BNL.

63. AUI violated its duties to use reasonable care to (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

64. AUI breached its duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations,

activities, services and functions at the laboratory and on the site due to its extensive TCE environmental pollution and toxic contamination of BNL.

65. AUI breached its duties to use reasonable care to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

### AUI's Severe and Extensive TCE Pollution and Contamination at BNL Violated the Operating Contract & Federal Law

66. Despite knowledge of the hazards, dangers and risks to human health, safety and welfare presented by TCE, AUI failed to safely use, store, handle, discharge, release, discard and dispose of TCE at BNL resulting in severe and extensive TCE environmental pollution and toxic contamination throughout the laboratory site.

67. AUI's failure to safely use, store, handle, discharge, release, discard and dispose of TCE at BNL was protracted and continuous throughout its tenure as the "operating contractor".

15

68. AUI violated the Safe Drinking Water Act (SDWA), Clean Air Act (CAA), Resource Conservation and Recovery Act (RCRA) and Toxic Substance Control Act (TSCA), in pertinent part, because of its continuous and protracted failures to safely use, store, handle, discharge, release, discard and dispose of TCE at BNL resulting in severe and extensive TCE environmental pollution and toxic contamination at the laboratory site.

**BNL's TCE Pollution & Contamination**

69. Subsequent to the USEPA declaring BNL a "Superfund Site" in 1989, AUI's extensive TCE environmental pollution and toxic contamination of the laboratory site was well documented.

70. A 1994 BNL consulting engineers' report described a "TCE Spill Area" on Brookhaven Avenue directly in the middle of the campus in the most densely populated area containing most of the buildings, structures and facilities on the site. This "TCE Spill Area" existed since the 1950's and was caused by the direct discharge of TCE onto the ground.

71. The 1994 report contained an analysis of cesspool sludge sampling at BNL found TCE contamination levels at 300,000 µg/kg. The analysis demonstrated massive TCE pollution and contamination as a result of negligent disposal practices into drains emptying to the sewers, septic sewer system and cesspools with consequent leakage into soils, surface waters, groundwater and the underlying aquifer. The report warned that the "presence of high levels of …… TCE at this location represents a potential source of groundwater contamination".

Case 2:20-cv-03066-GRB-RML   Document 1   Filed 07/09/20   Page 17 of 37 PageID #: 17

72. A 1996 USEPA report on BNL pollution and contamination contains tables showing elevated levels of TCE in the groundwater 4 times above the federal and state standards for maximum contaminant level (MCL). The federal and state standards are 5 MCL; however, the report showed that the TCE contamination level in BNL's groundwater was 20 MCL.

73. USEPA and New York State Department of Environmental Conservation (NYSDEC) performed an environmental audit and inspection of BNL during 1997 that, in pertinent part, described elevated levels of TCE environmental pollution and toxic contamination.

74. NYS AG Vacco's report, dated October 16, 1997, entitled "Brookhaven National Laboratory: At The Crossroads", described some of the results of the USEPA and NYSDEC audit and inspection:

> "The involved agencies each stressed that the contamination posing the most serious threat was caused by _chemical wastes_, not tritium or other radioactive contaminants. These _chemical wastes_ include 1.1.1,-trichloroethane ("TCA"), EDB, carbon tetrachloride, and _trichloroethylene ("TCE")_. …… The Review found that TCA and _TCE_, _commonly used in many Laboratory facilities as equipment degreasers, were often discharged to sinks and drains or poured directly onto the ground_."

(Emphasis added.)

75. The USEPA charged AUI with violations of the Safe Drinking Water Act (SDWA), Clean Air Act (CAA), Resource Conservation and Recovery Act (RCRA) and Toxic Substance Control Act (TSCA) on March 9, 1998.

76. A USEPA report on BNL contamination, dated April 14, 2000, stated that "_[t]richloroethene_

*(TCE) was detected in wells above the MCL of 5 ppb at levels ranging from 7 to 27 ppb*, primarily in the area between Princeton Avenue and the South Boundary Road." (Emphasis added.)

77. This USEPA report from the year 2000 also states,

> "[t]he VOCs found in the Magothy aquifer above the drinking water standard off-site in the OU III groundwater plume were carbon tetrachloride at 7090 ppb, chloroform at 45 ppb, and *trichlorothene (TCE) at 30 ppb*. These data are from the 1998 and 1999 sampling of an off-site monitoring well located 275 to 285 feet below land surface within the Magothy Aquifer that was sampled as part of our onoing groundwater monitoring program. The depth of the monitoring well is 275 to 285 feet below land surface (approximately 187 to 197 feet below mean sea level)".

(Emphasis added.)

78. The 2000 USEPA report also identifies the "TCE Spill Area" as a location where TCE was directly discharged onto the ground in the 1950's.

79. The 2000 USEPA report contains a table that shows excessive TCE contamination levels were found in soils (0.7 mg/kg), subsurface soils (0.06 mg/kg), surface water (11 µg/L) and groundwater (5 µg/L).

80. Also in 2000, USEPA issued groundwater survey maps showing plumes of toxic chemical and radioactive isotope pollution and contamination underlying BNL's OU III, i.e., the location on the site with the highest daily population density and highest number of occupied buildings, structures and facilities. This location is also known as the "Central Campus". The groundwater survey maps depict plumes for TVOCs (see, Exhibit 1, TVOC Groundwater

Plume Map). The TVOCs in the groundwater plume include TCE at levels in excess of the

federal and state MCLs.

81. In 2002, BNL issued a report entitled Groundwater Protection Management Program

Description that described the continuing existence of TCE contamination in groundwater at

the site.

82. BNL issued a "Final Five Year Report for Brookhaven National Laboratory Superfund Site"

in July 2006 after years of remediation efforts. In pertinent part, the report stated the

following about TCE contamination at the site:

> "VOC contaminated groundwater including ***trichloroethene (TCE)*** [is] on and off
> of BNL property"
>
> "Groundwater: *The primary contaminants in the groundwater on and off of the*
> *BNL site include* <u>*trichloroethene (TCE)*</u> *and tritium. Tritium has not been detected*
> *above the drinking water standards, and* <u>*TCE concentrations are slightly above*</u>
> <u>*the standards*</u>."

(Emphasis added.)

83. The U.S. Department of Labor (USDOL) has issued Site Exposure Matrices for BNL that

document numerous buildings, facilities, structures and locations at the site that were

polluted and contaminated with TCE sufficient to expose people to the hazards, dangers and

risks presented by this toxic chemical.

84. The foregoing governmental and BNL reports, records and documents confirm AUI's severe

and extensive TCE pollution and contamination that existed at the laboratory site during the

period of time that JOSEPH TORRE worked at the site.

## **TCE Toxicity & Carcinogenicity**

85. A "carcinogen" is a substance that is known to cause cancer.

86. TCE was classified and accepted as a "known human carcinogen" by the U.S. government in 2016.

87. TCE was also classified and scientifically accepted as a toxic substance hazardous to human health in non-cancerous ways since the 1950's.

88. The U.N. World Health Organization (WHO) and International Association for Research on Cancer (IARC) declared TCE to be a known human carcinogen in 2011.

89. TCE was declared a known human carcinogen by the USEPA, NIH/NIEHS National Toxicity Program, and U.S. Health & Human Services' Agency for Toxic Substances and Disease Registry (USHHS, ATSDR) in or about 2016.

90. The 14th Report on Carcinogens to Congress described TCE as a known human carcinogen on November 3, 2016.

91. TCE exposure can cause cancers and other diseases in humans through mutagenic, genotoxic and non-genotoxic mechanisms.

92. TCE exposure can cause kidney cancer, kidney failure, liver cancer, liver failure, non-Hodgkin's lymphoma, and esophageal cancer among other illnesses, injuries and conditions.

93. Pathogenic TCE exposure routes are inhalation, trans-dermal contact, ingestion, and vapor intrusion into the ambient indoor air of enclosed structures.

## JOSEPH TORRE's Employment at BNL

94. JOSEPH TORRE, now 75 years old, worked on the grounds of Brookhaven National Laboratory during the years 1992 – 2017 in various roles.

95. During the period 1992 – 1998, Mr. TORRE was employed by Peter Scalamandre & Sons Construction Co.[4] at the BNL site as a construction supervisor and inspector.

96. During the period 1998 – 2007, Mr. TORRE was employed by Lizardos Engineering Associates, P.C.,[5] at the BNL site as a construction and demolition supervisor and inspector.

97. During the period 2007 – 2017, Mr. TORRE was employed by Brookhaven Science Associates, LLC, (BSA) at the BNL site as a construction, demolition and works supervisor.

98. JOSEPH TORRE was not an employee of AUI or an AUI subcontractor when he worked at the BNL site during the approximate period 1998 - 2017.[6]

---

[4] Peter Scalamandre & Sons Construction Co. was a contractor for defendant AUI during the years 1992 – 1998.
[5] Lizardos Engineering Associates, P.C., was a contractor for BSA at the BNL site during the years 1998 – 2007.
[6] This period encompasses the time that TORRE worked at BNL as a BSA subcontractor's employee or BSA employee.

**JOSEPH TORRE's TCE Exposure at BNL**
**Caused His Liver Cancer**

99. During the years 1998 – 2017, JOSEPH TORRE worked at the BNL site in numerous locations contaminated with TCE pollution including in, at or within the vicinity of Building 134, Building 400, AGS, RHIC, Lenox Building, Building 912, Building 911, Building 703, Building 811, Building 901, Building 906 (PET Laboratory), Building 924, Building 926, Building 479 (Heavy Metal Machine Shop), Building 462 (Central Machine Shop), Building 725 (Physics Building); Building 555 (Chemistry Building), Building 452 (Chemistry Building), Building 452 (Biology Building), Building 515 (Information Technology Building), Building 490 (Medical Research Building), Buildings 444-448 (Igloos), and numerous other buildings, facilities, structures, and appurtenances on the BNL site.

100.    Mr. TORRE was exposed to hazardous, dangerous and unsafe levels of TCE pollution and contamination at BNL during numerous construction, demolition and renovation projects in his role as a construction, demolition and works supervisor and inspector.

101.    Mr. TORRE supervised and inspected the construction, demolition, excavation or decontamination activities at various locations throughout BNL.

102.    Mr. TORRE's work at BNL involved projects at (1) Buildings 444 – 448, otherwise known as the "Igloos", that stored toxic chemicals, substances and wastes; (2) the hazardous waste facility; (3) the sewage treatment plant; (4) cesspools and septic tanks containing toxic sludge; (5) excavations into areas with soils and groundwater that had high levels of toxic contaminants; (6) excavations and removals of old septic sewer pipes; (7) excavations for

construction of new septic sewer lines connecting buildings to the sewage treatment plant; (8) excavations of contaminated soil; and (9) renovations in numerous buildings, facilities, structures and appurtenances throughout the site.

103.   Mr. TORRE was exposed to hazardous, dangerous and unsafe levels of TCE pollution and contamination at BNL through the routes of inhalation, trans-dermal contact, ingestion and vapor intrusion in the ambient air.

104.   Mr. TORRE drank water drawn from the TCE polluted and contaminated groundwater.

105.   Mr. TORRE drank coffee and tea brewed from the TCE polluted and contaminated water supply.

106.   Mr. TORRE washed his hands and utensils with the TCE polluted and contaminated water.

107.   Mr. TORRE breathed in fumes or vapors from the TCE polluted and contaminated soils, groundwater, surface water, buildings, facilities, structures, appurtenances, locations and land.

108.   Mr. TORRE sustained trans-dermal contact from touching surfaces that were polluted and contaminated by TCE.

109.   Mr. TORRE's exposure to TCE at BNL caused his liver cancer.

110.    JOSEPH TORRE was diagnosed with hepatocellular carcinoma, i.e., liver cancer, on or about January 4, 2019.

111.    JOSEPH TORRE's exposure to AUI's severe and extensive TCE environmental pollution and toxic contamination of BNL caused extreme hazards, dangers, and risks to his health, safety and welfare.

112.    JOSEPH TORRE's exposure to AUI's severe and extensive TCE environmental pollution and toxic contamination of BNL caused, contributed to and/or was a substantial factor resulting in the development of his liver cancer and consequent related conditions, complications, injuries, illnesses, harm and losses.

## FIRST CAUSE OF ACTION:
## NEGLIGENCE

113.    Plaintiffs JOSEPH TORRE and BARBARA TORRE repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "112" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

114.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all employees, contractors, subcontractors, visitors, occupants and other people at and within the vicinity of the site, including JOSEPH TORRE, to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

115.   Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all employees, contractors, subcontractors, visitors, occupants, and other people at and within the vicinity of the site, including JOSEPH TORRE, to use reasonable care to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from pollution and contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from pollution and contamination; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

116.   Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to use reasonable care to prevent environmental pollution and toxic contamination so as to ensure the safety of the site and protect the health, safety and welfare of people at, on or in the vicinity of the site.

117.   Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed

25

duties to all employees, contractors, subcontractors, visitors, occupants and other people at and within the vicinity of the site, including JOSEPH TORRE, to use reasonable care to safely and properly operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

118. Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all BNL employees, contractors, subcontractors, workers, visitors, occupants and other people at or in the vicinity of the site, including JOSEPH TORRE, to use reasonable care in properly and adequately providing for the safe use, handling, storage, discharge, release, discarding and disposal of TCE.

119. AUI breached and violated the duties owed to JOSEPH TORRE to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

120. AUI breached and violated the duties owed to JOSEPH TORRE to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from pollution

26

and contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from pollution and contamination; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

121.    AUI breached and violated the duties owed to JOSEPH TORRE to safely and properly operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

122.    AUI breached and violated the duties owed to JOSEPH TORRE to safely and properly prevent environmental pollution and toxic contamination so as to ensure the safety of the site and protect the health, safety and welfare of people at, on or in the vicinity of the site.

123.    AUI breached and violated the duties owed to JOSEPH TORRE to properly and adequately provide for the safe use, storage, handling, discharge, release, discarding and disposal of TCE.

124.    AUI negligently failed to safely and properly operate, control, manage, supervise, direct,

administer, oversee and conduct all BNL research, work, operations, activities, services and functions.

125.    AUI negligently failed to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from pollution and contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from pollution and contamination; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

126.    AUI negligently failed to safely and properly operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

127.    AUI negligently failed to safely and properly prevent environmental pollution and toxic contamination so as to ensure the safety of the site and protect the health, safety and welfare

of people at, on or in the vicinity of the BNL site.

128.    AUI negligently failed to properly and adequately provide for the safe use, handling, storage, discharge, release, discarding and disposal of TCE at BNL.

129.    AUI's foregoing negligence and breaches and violations of the duties owed to JOSEPH TORRE and others caused BNL to be severely and extensively polluted and contaminated with TCE.

130.    AUI's severe and extensive TCE pollution and contamination at BNL subjected JOSEPH TORRE to exposure to this toxic chemical and caused hazards, dangers and risks to his health, safety and welfare.

131.    AUI's negligent severe and extensive TCE pollution and contamination at BNL caused, contributed to and were substantial factors resulting in JOSEPH TORRE's liver cancer and other related conditions, complications, illnesses, injuries, harm and losses.

132.    The foregoing negligence of AUI caused, contributed to and was a substantial factor resulting in JOSEPH TORRE's liver cancer and other related conditions, complications, illnesses, injuries, harm and losses, conscious pain and suffering, grave injuries, loss of function and use of an organ system, consequential medical sequelae, scarring, disfigurement, risk of recurrence, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss

of enjoyment of life.

133.     The injuries, illnesses, harm, losses and damages sustained by JOSEPH TORRE were

caused solely and wholly by virtue of the foregoing negligent acts, omissions and conduct of

AUI, and were in no way caused and/or contributed to by Mr. TORRE.

134.     By reason of the foregoing, plaintiff JOSEPH TORRE is entitled to compensatory and

punitive damages from defendant AUI for his non-economic and economic injuries.

135.     By reason of the foregoing, plaintiff JOSEPH TORRE demands judgment against

defendant AUI in the amount of $25,000,000.00 in compensatory and punitive damages.

### SECOND CAUSE OF ACTION:
### STRICT LIABILITY FOR
### ABNORMALLY DANGEROUS ACTIVITIES

136.     Plaintiffs JOSEPH TORRE and BARBARA TORRE repeat, re-allege and reiterate each

and every allegation contained in paragraphs numbered "1" through "135" of the Complaint

as if fully repeated, re-alleged and reiterated in this paragraph.

137.     AUI's TCE use, misuse, storage, handling, discharge, release, discarding and disposal of

TCE at BNL were negligent, reckless, and/or intentionally careless and constituted an ultra-

hazardous or abnormally dangerous activity for which they are strictly liable.

138.     AUI negligently used, misused, stored, handled, discharged, released, discarded and

disposed of TCE at BNL with the knowledge that TCE was toxic, carcinogenic and/or ultra-

hazardous and abnormally dangerous to human health, safety and welfare.

139.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct resulted in the extensive TCE environmental pollution and contamination of BNL's buildings, structures, facilities, soils, surface waters, groundwater, drinking water supplies, land, and ambient air.

140.    AUI's foregoing ultra-hazardous or abnormally dangerous TCE related activities and conduct resulted in extensive TCE environmental pollution and contamination at BNL that caused, created and resulted in foreseeable risks of personal injury, illness, harm and/or death to workers at the site, including JOSEPH TORRE.

141.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct resulted in extensive TCE environmental pollution and contamination at BNL that caused, created and resulted in a high degree of risk to the health, safety and welfare of workers at the site, including JOSEPH TORRE.

142.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL caused, created and resulted in a high risk of harm to workers at the site, including JOSEPH TORRE, that could not otherwise be eliminated without closure of the laboratory.

143.   AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL were not a matter of common usage.

144.   AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL in a densely populated location presented such a high degree of hazards, dangers and risks to human health, safety and welfare to workers at the site, including JOSEPH TORRE, that such hazards, dangers and risks outweighed its value to the community.

145.   AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL were inappropriate to the densely populated location.

146.   AUI allowed and/or caused these ultra-hazardous and abnormally dangerous TCE related conditions to exist at BNL as legacy contamination in the form of environmental pollution and toxic contamination during the period 1998 – 2017 when JOSEPH TORRE worked there as the employee of a contractor for BSA and as a BSA employee.

147.   The foregoing hazards, dangers and risks of ultra-hazardous and abnormally dangerous TCE related activities and conduct to BNL workers, including JOSEPH TORRE, outweighed any value associated with the same.

148.   AUI is strictly liable to JOSEPH TORRE for his liver cancer and the related injuries, illnesses, harm and losses caused by the foregoing ultra-hazardous and abnormally dangerous

TCE related activities and conduct at BNL.

149.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct caused, contributed to and were substantial factors resulting in JOSEPH TORRE's liver cancer and other related conditions, complications, illnesses, injuries, harm, and losses.

150.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct caused, contributed to and were substantial factors resulting in JOSEPH TORRE's liver cancer and other related conditions, complications, illnesses, injuries, harm, and losses, conscious pain and suffering, grave injuries, loss of function and use of an organ system, consequential medical sequelae, scarring, disfigurement, risk of recurrence, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

151.    The injuries, illnesses, harm, and losses sustained by JOSEPH TORRE were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI and were in no way caused and/or contributed to by Mr. TORRE.

152.    By reason of the foregoing, plaintiff JOSEPH TORRE is entitled to compensatory and punitive damages from defendant AUI for his non-economic and economic injuries.

153.    By reason of the foregoing, plaintiff JOSEPH TORRE demands judgment against defendant AUI in the amount of $25,000,000.00 in compensatory and punitive damages.

### THIRD CAUSE OF ACTION:
### GROSS NEGLIGENCE

154.    Plaintiffs JOSEPH TORRE and BARBARA TORRE repeat, re-allege and reiterate each

and every allegation contained in paragraphs numbered "1" through "153" of the Complaint

as if fully repeated, re-alleged and reiterated in this paragraph.


155.    AUI's foregoing TCE related activities and conduct at BNL were grossly negligent,

reckless, and/or intentional.


156.    AUI's foregoing TCE related activities and conduct at BNL were undertaken in reckless

disregard of the health, safety and welfare of BNL workers, including JOSEPH TORRE.


157.    AUI's foregoing TCE related activities and conduct at BNL were undertaken with gross

indifference to the health, safety and welfare of BNL workers, including JOSEPH TORRE.


158.    AUI's foregoing TCE related activities and conduct at BNL were undertaken with the

knowledge, awareness and/or reason to know that it would present an unreasonable risk of

injury, illness, harm, loss and/or death to workers, including JOSEPH TORRE.


159.    AUI's foregoing TCE related activities and conduct at BNL knowingly, willfully and

intentionally created an unreasonable risk of physical harm to workers, including JOSEPH

TORRE.

160.   AUI's foregoing TCE related activities and conduct at BNL resulted in the extensive TCE environmental pollution and contamination of the buildings, structures, facilities, soils, surface waters, groundwater, drinking water supplies, land, and ambient air at the site.

161.   AUI's foregoing TCE related activities and conduct at BNL were grossly negligent and caused, created and resulted in the foreseeable risks of personal injury, illness, harm and/or death to BNL workers, including JOSEPH TORRE.

162.   AUI's foregoing grossly negligent TCE related activities and conduct at BNL caused, contributed to and were substantial factors resulting in JOSEPH TORRE's liver cancer and other related conditions, complications, illnesses, injuries, harm, and losses.

163.   AUI's foregoing grossly negligent TCE related activities and conduct caused, contributed to and were substantial factors resulting in JOSEPH TORRE's liver cancer and other related conditions, complications, illnesses, injuries, harm, and losses, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, risk of recurrence, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

164.   The injuries, illnesses, harm, and losses sustained by JOSEPH TORRE were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI and were in no way caused and/or contributed to by Mr. TORRE.

35

165.    By reason of the foregoing, plaintiff JOSEPH TORRE is entitled to compensatory and punitive damages from defendant AUI for his non-economic and economic injuries.

166.    By reason of the foregoing, plaintiff JOSEPH TORRE demands judgment against defendant AUI in the amount of $25,000,000.00 in compensatory and punitive damages.

**FOURTH CAUSE OF ACTION:**
**LOSS OF CONSORTIUM**

167.    Plaintiffs JOSEPH TORRE and BARBARA TORRE repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "166" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

168.    That all times hereinafter mentioned, plaintiff BARBARA TORRE was and is the lawfully wedded wife of plaintiff JOSEPH TORRE and, as such, was and is entitled to the services, consortium and society of JOSEPH TORRE.

169.    By reason of the foregoing negligence, strict liability and gross negligence of the defendant AUI, plaintiff BARBARA TORRE was deprived of the aforesaid services, consortium and society of JOSEPH TORRE.

170.    By reason of the foregoing, plaintiff BARBARA TORRE is entitled to monetary damages for her loss of services, consortium and society.

36

171.    By reason of the foregoing, plaintiff BARBARA TORRE is entitled to compensatory and

punitive damages from defendant AUI for her non-economic and economic injuries.

172.    By reason of the foregoing, plaintiff BARBARA TORRE demands judgment against

defendant AUI in the amount of $5,000,000.00 for compensatory and punitive damages.

**WHEREFORE,** plaintiffs demand judgment awarding compensatory and punitive

damages against defendant AUI on the first, second, and third causes of action of the Complaint

in the amount of $25,000,000.00 for each cause of action; compensatory and punitive damages

on the fourth cause of action of the Complaint against defendant AUI in the amount of

$5,000,000.00; and the interest, costs and disbursements of this action, together with such other

and further relief as the court deems just and proper.

Dated: New York, NY
        July 7, 2020

Yours, etc.,

*/s/ J. Lanni*

_____
**JOSEPH LANNI**
THE JACOB FUCHSBERG LAW FIRM, LLP
Attorneys for Plaintiffs
JOSEPH TORRE
and BARBARA TORRE
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: 212.869.3500
Fax: 212.398.1532
j.lanni@fuchsberg.com